# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

BRIAN D. TAYLOR,

     Plaintiff,

v.                                   Civil Action No. _____

EXPERIAN INFORMATION SOLUTIONS INC.;
TRANS UNION LLC;
and
VERIZON COMMUNICATIONS INC.,

     Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, BRIAN D. TAYLOR ("Mr. Taylor" or "Plaintiff"), by Counsel, and for his Complaint against Defendants EXPERIAN INFORMATION SOLUTIONS INC.; TRANS UNION LLC; and VERIZON COMMUNICATIONS INC., Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x.

2. Today in America there are three major consumer reporting agencies, Equifax, Experian and Trans Union, and hereafter referred to collectively as the "CRAs".

3. The FCRA demands that CRAs utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

4.      The FCRA's accuracy provision demands that CRAs take actual steps to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like Verizon, particularly where a consumer makes a dispute about information reported.

5.      Also, when a consumer like Plaintiff disputes the accuracy of information through the CRAs, those disputes are transmitted to the party furnishing the information, here Verizon. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6.      Plaintiff brings claims under Section 1681e(b) against Experian and Trans Union because each reported inaccurate information about Plaintiff regarding a Verizon utility account. When Plaintiff disputed the inaccuracies, Experian and Trans Union did not reasonably investigate, also violating Section 1681i.

7.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017). This is particularly true as to how Experian and Trans Union have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation. Experian and Trans Union have been repeatedly sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct. Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

8.      Likewise, Verizon violated the FCRA, Section 1681s-2(b), when it received Plaintiff's disputes from Experian and Trans Union and failed to reasonably investigate those

disputes. Instead, discovery will show all Verizon did was consult its own records about the account and confirm to the agencies the inaccurate information it was already reporting.

## JURISDICTION & VENUE

9.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p.

10.     Venus is proper in this District and Division because the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District and Division.

## PARTIES

11.     Plaintiff Brian D. Taylor is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.     Defendant Experian Information Solutions, Inc. is a foreign corporation, authorized to conduct business in the Commonwealth of Virginia through its registered agent.

13.     Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

14.     Trans Union is a foreign corporation, authorized to conduct business in Commonwealth Virginia through its registered agent.

15.     Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f), and it disburses consumer reports to third parties for monetary compensation.

16.     Verizon is a multinational telecommunications conglomerate headquartered in New York City, incorporated in Delaware, and it does business in this District through its registered agent.

17.     Verizon is a "furnisher" of information as defined and governed by 15 U.S.C. § 1681s-2.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the CRA Defendants' Creditor-Customers*

18.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *Id*. at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 414-15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

19.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke*, 2011 WL 1085874, at *4.

20.     Section 1681i(a), on the other hand, requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . .  before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

21.     Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

22.     It has long been the law that a CRA, such as Experian, Equifax, or TransUnion, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the disputed item. *See, e.g., Pinner v. Schmidt*, 805F.2d 1258, 1262 (5th Cir. 1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted*, No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

23.     That "grave responsibility" imposed by the FCRA reinvestigation requirement "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

24.      As the Fourth Circuit explained in *Johnson v. MBNA*:

The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed. 2000); *see*

> Webster's Third New Int l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

25.     Further, as the CRA Defendants are aware, this Court has held that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id*. at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

26.     It has long been the law – since 1970 in fact – that:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

27.     Today, furnishers such as Verizon, and other of the CRA Defendants' furnishers, have their own independent duties under the FCRA, principally those found at 15 U.S.C. § 1681s.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

But while the CRA Defendants' duties under § 1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996. THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

***Plaintiff Discovers Experian and Trans Union Were***
***Inaccurately Reporting the Verizon Account as Charged Off***

28.     In 2018 and 2019, Plaintiff was a tenant of a condominium unit in Charlottesville, Virginia.

29.     In 2017, Plaintiff was the subscriber of an account with Verizon for Verizon Fios, a bundled internet access, telephone, and television service that operates over a fiber-optic communications network.

30.     On or about August 17, 2017, Plaintiff cancelled his Verizon account due to the fact that he was changing his residence and at this time, Plaintiff provided Verizon with his new forwarding address.

31.     At all relevant periods of time prior to Plaintiff's cancellation of his Verizon account, Plaintiff was enrolled in autopay and Plaintiff's Verizon bills were automatically paid from Plaintiff's designated bank account on file with Verizon.

32.     At no time when Plaintiff cancelled his Verizon Fios account did Verizon notify Plaintiff that it would terminate the autopay on Plaintiff's account or otherwise inform Plaintiff that he would need to make his last payment manually.

33.     Plaintiff never received a final bill from Verizon despite having provided a forwarding address to Verizon, but he didn't worry because he had autopay set up to pay the account each month.

34.     December 2017, Plaintiff noticed that the Verizon account was reporting as 60 days late on his credit report. Plaintiff immediately contacted Verizon regarding the account.  Plaintiff

was advised that Verizon had taken the account off autopay when Plaintiff cancelled his subscription and therefore Plaintiff was responsible for paying the final bill.

35.     Plaintiff never received a final bill because Verizon did not send it to the forwarding address that Plaintiff had previously provided to Verizon. Plaintiff requested a copy of his final bill.

36.     In December 2017, Plaintiff received the final Verizon bill and paid it as soon as he received it.

37.     Later in December 2017, Plaintiff called Verizon's credit department in an attempt to have the derogatory reporting on his credit report removed due to Verizon's error in not sending a final bill to the forwarding address Plaintiff previously provided as well as terminating Plaintiff's autopay without warning. During this call, Verizon took no responsibility for its own errors and instead the Verizon representative chastised Plaintiff and advised that he should have paid his bills on time.  Plaintiff was further advised that Verizon would only update Plaintiff's account to report as *paid after charge off*. Plaintiff's account was never in charge off status and should not have reported as late to begin with.

38.     Plaintiff contacted Verizon by phone a second time in December 2017.  Plaintiff was hoping to redress the credit reporting errors. Plaintiff spoke with a representative who identified herself as "Katerina." Katerina confirmed the account was never referred to collections and that payment had been made. However, Verizon still refused to remove the derogatory reporting.

39.     On September 19, 2019, Plaintiff applied for credit with LendingPoint LLC, a servicing agent for FinWise Bank.  Plaintiff's credit application was denied due to the derogatory reporting by Trans Union regarding the Verizon account.

40.     On or about February 29, 2020, Plaintiff applied for a $50,000 loan with USAA. Plaintiff credit application was denied due to the derogatory reporting by Experian regarding the Verizon account.

41.     On or about November 2, 2020, Plaintiff applied for an auto loan with USAA. Plaintiff's credit application was denied due to the derogatory reporting by Experian regarding the Verizon account.

### *Plaintiff Disputes the Inaccuracies with The CRAs*

42.     On or about December 9, 2019, after being denied credit, Plaintiff submitted disputes to both Experian and Trans Union regarding the derogatory reporting of the Verizon account.  Plaintiff requested that Trans Union and Experian correct the inaccurate, erroneous and unverified representations made by Verizon on his credit files.

43.     On or about December 18, 2019, Trans Union forwarded its investigation results to Plaintiff.  Trans Union advised that it had updated the disputed Verizon account. The Verizon tradeline continued to be reported with a pay status of "Account paid in full collection" and a notation of "Paid Collection."

44.     On December 19, 2019, Experian forwarded Plaintiff a copy of his Experian Consumer Disclosure in response to his request.  This report did not appear to be a response to the Plaintiff's Dispute.  The Verizon account as reporting as paid, closed and that the account was closed at consumer's request.  The Verizon account was also marked as having been in Collection status in December 2017.  The account also reflected a notation that the dispute investigation had been completed.

45.     On or about January 7, 2020, Plaintiff sent a second dispute letter to Experian and Trans Union.  Plaintiff requested that Experian and Trans Union look at the full details of his

dispute. Plaintiff reiterated that his Verizon account was paid by autopay and that Verizon had cancelled his autopay without warning.  Plaintiff further advised that Verizon failed to send Plaintiff a final bill to the forwarding address that Plaintiff had previously provided. Plaintiff advised that he paid the bill in December 2017 when he became aware that it was reporting derogatorily on his Experian and Trans Union credit reports as 60 days late.  Plaintiff advised that the Verizon account was never in collections or charged off.

46.     On February 4, 2020, Experian responded to Plaintiff's January 7, 2020, dispute. Experian advised that the Verizon account had been updated.  The Verizon account was reporting as paid and closed with a notation that the account was closed.  The Verizon account was also marked as having been in Collection status in December 2017.  The Verizon account was reporting that the dispute investigation had been completed, but the consumer disagreed.

47.     On February 5, 2020, Trans Union forwarded its investigation results to Plaintiff and deleted the Verizon tradeline from Plaintiff's credit report.

### The CRA Defendants Did Not and Do Not
### Conduct Any Investigation of Most Consumer Disputes

48.     Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian and Trans Union to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendors located overseas. Trans Union uses a vendor, previously known as Intelenet Global Services and now as Teleperformance.

49.     Experian uses a sister company, Experian Chile (or Experian Costa Rica) to process its mail disputes.[2]

---

[2] Defendant Experian took a different route, outsourcing its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D.

50.     Both Teleperformance and the Experian affiliate use low-wage employees to work quickly to process consumer dispute letters received, skimming the letters and selecting one or a handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits

51.     These dispute agents with Teleperformance and Experian Chile are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

52.     The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

53.     In fact, Experian and Trans Union strongly encourage consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian and TransUnion. It gets sent to Defendants' creditor customer (such as Verizon) for its sole review and consideration.

54.     Trans Union has taken the position in other litigation that it has no control over Teleperformance. See, e,g., *Wilcox v. Servis One, Inc.*, No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that TransUnion did not have control or the ability to produce for deposition Indian employees of Intelenet).

---

Idaho 2013). Such was confirmed in a recent case in this District with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the same theory—no investigation was conducted by the CRA—as he alleges against Trans Union for its farming-out investigations to Teleperformance.

55.     Regardless of whether these statements are correct, both Experian and Trans Union believe that they cannot direct, control, manage or reliably influence the employees of their respective third-party outsource vendors.

56.     Trans Union and Experian themselves did not conduct any reinvestigation of Plaintiff's disputes. Instead, they merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

***The CRA Defendants Forwarded Plaintiff's Disputes to Verizon, Who Did Nothing***

57.     In each instance in which each Plaintiff disputed the Verizon account with Experian and Trans Union, Experian and Trans Union each forwarded Plaintiff's disputes to Verizon using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to Experian and Trans Union.

58.     e-Oscar is also the system by which Verizon has agreed it will accept such consumer disputes from the CRAs.

59.     Under such circumstances, Verizon became obligated under the FCRA to investigate Plaintiff's disputes.

60.     Plaintiff's disputes to Verizon, made in an attempt to have it reinvestigate his complaints, went unanswered, as it still continues to report the derogatory payment history regarding the Plaintiff.

61.     Verizon failed to reinvestigate Plaintiff's complaints.

62.     The information furnished by Verizon to Experian and Trans Union was at all times inaccurate.

63.     On or about a date better known to Experian and Verizon, Experian furnished Plaintiff's disputes to Verizon.

64.     Verizon failed to reasonably reinvestigate Plaintiff's disputes that Verizon received from Experian in violation of § 1681s-2(b)(1)(A) of the FCRA.

65.     Defendant Verizon further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian and prior to the commencement of this action.

66.     Experian responded to Plaintiff's disputes, claiming the information was reported verified as accurate and the information was updated. This response confirms that Experian communicated Plaintiff's disputes to Verizon.

67.     Plaintiff made a dispute to Trans Union, requesting that Trans Union verify and correct the inaccurate, erroneous and unverified representations made by Verizon on his credit file.

68.     On or about a date better known to Trans Union and Verizon, Trans Union furnished Plaintiff's disputes to Verizon.

69.     Verizon failed to reasonably reinvestigate Plaintiff's disputes that Verizon received from Trans Union in violation of § 1681s-2(b)(1)(A) of the FCRA.

70.     Defendant Verizon further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information for a period of time subsequent to receiving Plaintiff's second dispute from Trans Union and prior to the commencement of this action.

71.     Trans Union responded to Plaintiff's disputes, claiming the information was reported verified as accurate and the information was updated. This response confirms that TransUnion communicated Plaintiff's dispute to Verizon.

### *Plaintiff Suffered Actual Harm*

72.     Experian and Trans Union continued to report the derogatory Verizon account on Plaintiff's credit reports, despite being notified that this information was false.

73.     Plaintiff has been attempting to resolve these matters with Defendants and his credit was significantly destroyed by Defendants' failure to correct the inaccurate reporting.

74.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

  a.     Stress associated with being denied the ability to refinance or to obtain a new mortgage, and associated delays in applying for future lines of credit;

  b.     Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

  c.     Loss of time attempting to cure the error;

  d.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

  e.     Stress associated with attempting to resolve this matter in the last year.

### *Defendants' Conduct Was Willful*

75.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

76.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction

right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

77.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. Experian and Trans Union's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

78.     Experian and Trans Union have received many thousands of disputes and other complaints regarding the creditors at issue in this case-sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

79.     Just in federal court alone, during the last decade the creditor-furnisher disputed by Plaintiff has had to defend over 65 consumer lawsuits.

80.     In many or even most of these FCRA lawsuits brought by a consumer, one or more of the CRA Defendants was a named co-defendant.

81.     Experian and Trans Union knew or should have known of this litigation history. They use and have access to PACER to investigate and monitor such consumer complaints.

82.     The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

83.     Each Defendant regularly receives unredacted consumer dispute details from this database.

84.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

85.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Trans Union.

86.     Further, over 33,000 of the CFPB complaints as to Experian  and just shy of 38,000 against TransUnion were based largely on their failure to reasonably investigate consumer disputes.

87.     Further, consumers have submitted complaints about Verizon to the CFPB regarding its credit reporting.

88.     Just in the last 12 months alone, Experian and Trans Union have each been sued on by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that the Experian and Trans Union violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

89.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian and Trans Union on notice of the failures of their dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendants on notice that they may not merely "parrot" what their creditor- customer tells them if the consumer had provided a substantive and detailed dispute.

90.     Experian has had had actual notice from numerous other courts that its blind ACDV "parroting" was unlawful. *See, e.g., Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'").

91.     Trans Union has long been on even clearer notice. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable

reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a TransUnion case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). TransUnion's notice was so substantial that one District Court instructed the jury in a § 1681i(a) trial:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, No. CIV. 3:05-cv-888 (E.D. Va. Aug. 27, 2007).

92.    Experian and Trans Union have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

93.    In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).[3]

94.    The AG Settlement also required the CRA Defendants to conduct significant research and data gathering-even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

95.    Experian and Trans Union are also aware of substantive and detailed criticism by public interest groups about their automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this

---

[3] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News- Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors, National Consumer Law Center, February 2019. ("NCLC Report").[4]

96.     The NCLC Report summarized its context:

Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

97.     Among many of the Defendants' accuracy failures, the NCLC Report discovered:

•       Insufficient Information Conveyed and Considered in Investigation. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

•       Failure to Transmit Information Submitted by the Consumer. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

•       Perfunctory Credit Bureau Investigations. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

---

[4] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

•     Credit Bureaus Always Side with Furnishers. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

98.     Despite the notice and judicial, regulatory and public interest criticism, Experian and Trans Union have refused to change their dispute investigation process because it would cost too much money to do so.

99.     Experian and Trans Union' procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

### CLAIMS FOR RELIEF

### COUNT I
### Violation of § 1681e(b) of the FCRA – against Experian and Trans Union

100.     The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

101.     Defendants Experian and Trans Union willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files they published and maintained concerning the Plaintiff.

102.     As a result of this conduct, action and inaction of Experian and Trans Union, the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why he lost the ability to benefit from credit.

103.    Further, after the Plaintiff's disputes put them on notice of likely inaccuracies and reasons to doubt the correctness of the reporting of their creditor-customers, Experian and Trans Union each ignored such information and did not use any human or substantive review to confirm and verify that its procedures were ensuring maximum possible accuracy of the Plaintiff's credit reports.

104.    Experian and Trans Union each furnished multiple consumer reports to third parties containing the inaccurate tradeline information and they did so after receiving notice of these inaccuracies.

105.    Experian and Trans Union's conduct, action and inaction was willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

106.    As a result of Experian and Trans Union's violations of 15 U.S.C. § 1681e(b), the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

107.    The Plaintiff is entitled to recover his costs and attorney's fees from Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT II
### Violation of § 1681i of the FCRA – against Experian and Trans Union

117.    The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

118.    Experian and Trans Union willfully violated 15 U.S.C. § 1681i by failing to delete inaccurate information in the Plaintiff's consumer file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant

information to Plaintiff's creditors and/or creditors' attorneys; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

119.     Further, Experian and Trans Union violated Section 1681i by conducting no investigation at all. Section 1681i demands that when Plaintiff notified Experian and Trans Union directly of his disputes, that party-the consumer reporting agency who received the disputes-must investigate those disputes. The statute does not contemplate someone other than Experian or Trans Union conducting the investigation.

120.     Yet, Trans Union used an unrelated third-party, Teleperformance, over which it has no direct control, to conduct its investigations. Teleperformance is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Trans Union therefore violated 1681i on this basis because it sent Plaintiff's disputes away to a company that was not its controlled agent rather than investigating them as required.

121.     Furthermore, Experian used an unrelated third-party, Experian Chile, over which Experian has no direct control, to conduct its investigations. Experian Chile is not, in the words of the statute, "the [consumer reporting] agency" to whom Plaintiff disputed. Experian therefore violated 1681i on this basis because it sent Plaintiff's disputes away to a company that was not its controlled agent rather than investigating them as required.

122.     As a result of Experian and Trans Union's violations of 15 U.S.C. § 1681i, the Plaintiff is entitled to recover his actual damages pursuant to 15 U.S.C. § 1681n and/or § 1681o, or in the alternative his statutory damages of $1,000 pursuant to 15 U.S.C. § 1681n.

123.    Experian and Trans Union's conduct, action, and inaction was willful, rendering both Experian and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

124.    The Plaintiff is entitled to recover his costs and attorneys' fees from Experian and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT III
### Violation of § 1681s-2(b)(1)(A) and (B) of the FCRA – against Verizon

125.    The Plaintiff realleges and incorporates the foregoing paragraphs above as if fully set out herein.

126.    Defendant Verizon violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully conduct a reasonable investigation of the Plaintiff's disputes after said disputes were furnished to Verizon by Experian and Trans Union.

127.    On one or more occasions within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian and Trans Union.

128.    Based on the manner in which Experian and Trans Union responded to—or did not respond to—Plaintiff's disputes, representing that Verizon had "verified" the supposed accuracy of its reporting, Plaintiff alleges that Experian and Trans Union did in fact forward the Plaintiff's dispute via ACDV to Verizon.

129.    Verizon understood the nature of Plaintiff's dispute when it received the ACDVs from Experian and Trans Union.

130.    Notwithstanding the above, Verizon follows a standard and systematically unlawful process when it receives an ACDV dispute.  Basically all Verizon does is review its own internal

computer screens for the account and repeat back to the ACDV system the same information it already has reported to Experian and Trans Union.

131.     When Verizon receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system itself is inaccurate.

132.     As a result of Verizon's violations of 15 U.S.C. § 1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages including but not limited to loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

133.     Verizon's FCRA violations were willful, rendering it is liable for actual, statutory damages and punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Verizon was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

134.     The Plaintiff is entitled to recover his costs and attorneys' fees from Verizon in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT IV
### Violation of § 1681s-2(b)(1)(C) and (D) of the FCRA – against Verizon

135.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

136.     On one or more occasions within the past two years, by example only and without limitation, Verizon violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with Experian and Trans Union in response to his disputes without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to Experian and Trans Union.

137.   On information and belief, Plaintiff alleges that Verizon rarely if ever adds the notation that the account is disputed when it responds to the e-Oscar ACDVs.

138.   Plaintiff's disputes were, at a minimum, bona fide.

139.   As a result of these violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Plaintiff suffered actual damages including but not limited to:  loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

140.   Verizon's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Verizon was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

141.   Verizon was aware of the *Saunders v. Branch Banking & Trust* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's dispute.

142.   On information and belief, Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that Verizon intended its employees or agents to follow.

143.   On information and belief, Plaintiff alleges that Verizon employees or agents did not make a mistake in the way in which he or she followed Verizon's procedures when he or she received, processed and responded to Experian and Trans Union's ACDVs and did not include any notation that the account was disputed.

144.   On information and belief, the Plaintiff alleges that Verizon has not materially changed its FCRA investigation procedures regarding the notation of a dispute in ACDVs after learning of its failures in this case.

24

145.   Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Verizon in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT V**
**Violation of § 1681s-2(b)(1)(E) of the FCRA – against Verizon**

146.   The Plaintiff realleges and incorporates the foregoing paragraphs as if fully set out herein.

147.    Defendant Verizon violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from Experian and Trans Union and prior to the commencement of this action. This failure to correct Plaintiff's information resulted from Verizon's failure to investigate as articulated herein, after Verizon received notice of Plaintiff's disputes from Experian and TransUnion.

148.   As a result of this conduct, action and inaction of Verizon, the Plaintiff suffered actual damages, including but not limited to loss of credit, loss of the ability to purchase and benefit from a credit, reduction in credit scores, reduction in lines of credit, and denial for various financial products, the mental and emotional pain and anguish and the humiliation and embarrassment of having to borrow money and offer explanations for why they lost the ability to benefit from credit.

149.   Verizon's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

150.   The Plaintiff is entitled to recover his costs and attorneys' fees from Verizon in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants; for his attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate; specific performance and injunctive relief; and such other relief the Court deems just and proper.

December 3, 2021

Respectfully Submitted,
**BRIAN D. TAYLOR**

By: /s/ Leonard A. Bennett
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

Thomas R. Breeden, VSB #33410
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, VA 20109
(703) 659-0188 – Telephone
(703) 337-0441 – Facsimile
Email: TRB@Tbreedenlaw.com